**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **In re: Sam Shannon Weathers** | **No. 5:09-bk-73659** |
| **and Melissa Sue Weathers, Debtors** | **Ch. 7** |

| | |
|---|---|
| **Stephen R. Fowler, L. Elaine Fowler, and** | |
| **Franklin Charles Fowler** | **Plaintiffs** |
| **vs.**          **Adv. Proc. No. 5:09-ap-7203** | |
| **Sam Shannon Weathers and** | |
| **Melissa Sue Weathers** | **Defendants** |

### ORDER AND OPINION

On December 22, 2010, the plaintiffs, Stephen, L. Elaine, and Franklin Fowler [the Fowlers], filed an Amended Complaint for Objection to General Discharge under 11 U.S.C. § 727(a)(2), (3), (4), and (5) against the defendants and debtors, Shannon and Melissa Weathers [the Weatherses]. On December 29, 2010, the Weatherses filed an Answer to Amended Complaint for Objection to General Discharge. On March 22, 2011, the Weatherses filed an amended answer. On April 27, 2011, the Court held a hearing on the amended complaint and amended answer as well as the Weatherses' counterclaim, filed on June 28, 2010, in response to the Fowlers' original complaint. The counterclaim alleged that the Fowlers should be held in contempt of court for violating 11 U.S.C. § 362(a)(1) and (a)(6).

At the conclusion of the April 27 hearing, the Court took the matters under advisement. For the reasons stated below, the Court grants the relief requested in the amended complaint under § 727(a)(2) and (a)(4)(A) with regard to Shannon Weathers, and denies him a chapter 7 discharge. The Court denies the relief requested under § 727 as to Melissa Weathers. The Court also grants the relief requested in the Weatherses' counterclaim, and finds that the Fowlers violated § 362(a)(1) and (a)(6) but cannot award the

Weatherses a judgment because the Weatherses did not prove damages resulting from the violation of the automatic stay.[1]

## Jurisdiction

This Court has jurisdiction over these matters under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and they are core proceedings under 28 U.S.C. § 157 (b)(2)(A) and (J).  This Order and Opinion contains findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Background

The Weatherses filed their joint, voluntary chapter 7 bankruptcy petition on July 27, 2009, and filed their initial schedules and statements on August 10, 2009.[2]  During the almost two years leading up to the April 27 hearing, the Weatherses amended their Schedule B (the listing of personal property) to include additional assets not listed in their original Schedule B on four occasions: September 20, 2009; November 3, 2009; May 26, 2010; and April 13, 2011.  The Weatherses also amended their Schedule D on November 3, 2009, and their Statement of Financial Affairs on April 13, 2011.  The Fowlers allege that the Weatherses in bad faith concealed, misrepresented, or evaded disclosure of the following assets and other financial information in their bankruptcy petition and schedules:

- Misrepresentation of the Weatherses' homestead as 0.25 acres rather than 0.30 acres
- Sale of a Kubota tractor
- Interest in 2000 Ford F-150 truck and 45' Maze trailer

---

[1] The counterclaim also alleged that the Fowlers should be held in contempt for violating Federal Rule of Bankruptcy Procedure 9037 and General Order No. 24; however, this portion of the counterclaim was resolved before trial.

[2] Prior to filing their personal bankruptcy case, the Weatherses filed a voluntary, chapter 7 bankruptcy petition on behalf of their corporation, Hazardous Materials, Emergency Response & Training, Inc., on July 14, 2009.

- Interest in 1998 International Truck 4700 and 1999 Ford E-350
- Interest in 2002 GMC truck
- Interest in Integrity Leasing, Inc.
- Value of Enviro-Sources, Inc.
- Undisclosed Income from Haz-Mert

In response, the Weatherses deny the Fowlers' allegations and affirmatively contend the Fowlers violated the automatic stay under 11 U.S.C. § 362(a)(1) and (a)(6) by naming the Weatherses as defendants in an adversary proceeding in their corporation's bankruptcy case, Hazardous Materials, Emergency Response & Training, Inc. [Haz-Mert]. The Court will make reference to specific facts that support the Court's findings and conclusions when referencing each provision of the bankruptcy code that is before the Court: 11 U.S.C. § 727(a)(2), (3), (4), and (5); and 11 U.S.C. § 362(a)(1) and (6).

## Section 727 Generally

If the Court finds that the elements of § 727(a)(2), (3), (4), or (5) have been met with regard to either debtor, the Court must deny that debtor a chapter 7 discharge. "Denying a discharge to a debtor is a serious matter not to be taken lightly by a court." *McDonough v. Erdman* (*In re Erdman*), 96 B.R. 978, 984 (Bankr. D. N.D. 1988). Generally, a denial of a discharge is a "'harsh and drastic penalty.'" *Korte v. U.S. Internal Revenue Serv.* (*In re Korte*), 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001) (quoting *American Bank v. Ireland* (*In re Ireland*), 49 B.R. 269, 271 n.1 (Bankr. W.D. Mo. 1985)). Because of the severe nature of the remedy provided for in § 727, the statute's provisions "'are strictly construed in favor of the debtor.'" *Id*. at 471 (quoting *Fox v. Schmit* (*In re Schmit*), 71 B.R. 587, 589–90 (Bankr. D. Minn. 1987)). The Court will discuss and analyze the elements of § 727(a)(2), (3), (4), and (5) separately.

## Section 727(a)(2)

Under § 727(a)(2), the Court shall grant the debtor a discharge, unless—

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

3

        (A) property of the debtor, within one year before the date
of the filing of the petition; or

        (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).  In sum, the objecting creditor has the burden of proving by a
preponderance of the evidence that—

        (1) the act complained of was done within one year prior to the date of
petition filing, or after the date of the filing of the petition;

        (2) the act was that of the debtor;

        (3) it consisted of a transfer, removal, destruction or concealment of the
debtor's property, or, if the act occurred after the date of the filing,
property of the estate; and

        (4) it was done with an intent to hinder, delay, or defraud either a creditor
or an officer of the estate.

*See* 11 U.S.C. § 727(a)(2); *see Korte,* 262 B.R. at 472.  At issue in relation to the
§ 727(a)(2) cause of action is an alleged concealment of the actual acreage of the debtors'
homestead and an alleged concealment of a pre-petition transfer of a tractor.  The Court
will address each in turn.

### Concealment Under § 727(a)(2)

The alleged concealment under § 727(a)(2) concerns the Weatherses' homestead as listed
in their schedules.  On August 10, 2009, the Weatherses filed their initial schedules and
claimed as their homestead real property "on 1/4 acre lot in city" on their Schedule C as
exempt under § 522 pursuant to the Arkansas exemptions.  However, the real property
actually consisted of 0.30 acres not 0.25 acres.[3]  At the trial, Shannon Weathers admitted

---

[3] The Court notes that the inaccuracy of the acreage of the Weatherses' real property was
the subject of a prior Objection to Exemption filed by the Fowlers on October 16, 2009.  The
Fowlers objected to the Weatherses' claimed homestead exemption and alleged that the real
property was, in fact, 0.30 acres rather than 0.25 acres.  Within one month of the objection being
filed, the Weatherses amended their Schedule D to list a secured claim on the real property

4

that he did not check any public records to determine the acreage of the real property prior to filing bankruptcy. His explanation for listing the real property as only 0.25 acres was based on "utility easement setbacks by the city," including sidewalks and a utility easement, which he said reduced the usage of the property from 0.30 acres to 0.25 acres. However, Shannon Weathers did not explain how he had determined that those setbacks reduced his homestead to exactly 0.25 acres, except by stating "I had seen, when we bought it, the 0.25."

The Court will first address the first element—whether the act complained of occurred in the year prior to filing or after the petition was filed—and a portion of the third element—whether the act involved property of debtor if the act occurred before the filing or property of the estate if the act occurred after the filing. The inaccurate listing of the acreage technically occurred before the petition was filed when the schedules were completed, and at that time, the acreage was property of the debtor. However, the omission continued after the petition and schedules had been filed, and post-petition, the acreage was property of the estate. Therefore, while the omission of the additional acreage could be considered a pre-petition concealment of property of the debtor under § 727(a)(2)(A) or a continuing concealment of property of the estate under § 727(a)(2)(B), the distinction between the two prongs of § 727(a)(2) is not critical in this case. *See In re Hadley*, 70 B.R. 51, 53 (Bankr. D. Kan.1987) (holding that the debtor's failure to list assets on their bankruptcy schedules can be construed as concealment both before and after the filing of the bankruptcy petition); *Peterson v. Hazen* (*In re Hazen*), 37 B.R. 329, 332 (Bankr. M.D. Fla. 1983) (stating that it is generally recognized that "concealment is a continuing act and although the act of concealment might have commenced prior to the one year period," if it continues post-petition, the requirement of § 727(a)(2) is satisfied).

---

located on "0.3 acres lot in city." On December 4, 2009, the Court overruled the Fowlers' objection on the condition that the Weatherses pay to the trustee $11,000.00 to account for the non-exempt portion of their real property.

Regarding the second element, the Court finds that the act complained of—concealing the actual acreage of their homestead—was an act of both debtors. Shannon Weathers testified that he read their bankruptcy petition; Melissa Weathers testified that she was not sure whether she read "the bankruptcy petition" and then clarified that she did not understand the petition. Regardless, both signed their bankruptcy petition, schedules, and statement of financial affairs. The schedules were completed with information provided by Shannon, and presumably, Melissa Weathers. Therefore, the Weatherses were responsible for the information contained on their bankruptcy petition, schedules, and statement of financial affairs.

Regarding the remainder of the third element, the Weatherses retained possession and control of the additional acreage but concealed the additional acreage by not listing it initially on the bankruptcy schedules. A debtor's failure to list assets on the schedules may provide evidence of concealment. *Butler, Jr. v. Ingle* (*In re Ingle*), 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987); *Peterson*, 37 B.R. at 332. Therefore, the first three elements of § 727(a)(2)(A) and (B) have been met as to both debtors.

Regarding the fourth element, "the debtor's actual intent must be found as a matter of fact from the evidence presented." *Jacoway v. Mathis* (*In re Mathis*), 258 B.R. 726, 733 (Bankr. W.D. Ark. 2000). "'Constructive intent cannot be the basis for the denial of a discharge.'" *Id*. (quoting *Lovell v. Mixon*, 719 F.2d 1373, 1377 (8th Cir. 1983)). However, when a "creditor introduces circumstantial evidence proving the debtor's intent to deceive, the debtor 'cannot overcome [that] inference with an unsupported assertion of honest intent.'" *Id.* (quoting *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987)). "Because a debtor rarely admits to a fraudulent intent, the objecting party must generally rely on a combination of circumstances that suggest the debtor harbored the necessary intent." *Id.*

Shannon Weathers testified that he never intended to deceive or conceal any information from the Court, trustee, or parties to the bankruptcy. He also stated that at the time the

6

Weatherses were compiling information to complete their schedules, his daughter was suffering from serious medical conditions. Shannon Weathers admitted that these were "paramount" in his mind at the time. However, despite these statements, the Court finds that there is sufficient evidence to find that Shannon Weathers possessed the requisite intent to defraud under § 727(a)(2) in omitting the additional acreage from his schedules. The additional acreage had significant value, evidenced by the Weatherses' settlement agreement to pay $11,000.00 to the trustee for the previously undisclosed 0.05 acres once the inaccuracy was discovered. Based on Shannon Weathers's testimony, this Court is satisfied that he was attempting to make the trustee and creditors believe that his homestead was only 0.25 acres, which, if true, would provide for the real property being 100% exempt regardless of value under the Arkansas Constitutional exemptions. The Court finds Shannon Weathers's explanation of the setbacks and easements not only incorrect as a basis for his calculated reduction of the amount of property actually owned by the Weatherses, but also not credible. The Court believes he was aware through his counsel or other research that he was entitled to claim only 0.25 of an acre without regard to value as exempt if the property was within the city limits, as was the case here.

Based on the evidence, the Court finds that Shannon Weathers possessed the intent to hinder, delay, or defraud his creditors and the estate by omitting the additional acreage from the schedules, and the fourth and final element of § 727(a)(2) has been met with regard to Shannon Weathers. However, the Court finds there was not sufficient evidence to show that Melissa Weathers possessed the requisite intent to defraud under § 727(a)(2) in omitting the additional acreage. Melissa Weathers was not a cornucopia of information at the April 27 hearing. However, she was not questioned specifically about the discrepancy in the acreage. While she may have signed their personal bankruptcy petition and schedules, the Court cannot find she intended to defraud creditors by under-representing the actual acreage of the homestead. No cross-examination or other evidence was introduced that would reflect that Melissa Weathers was aware that their property was 0.30 acres as opposed to 0.25. The Court is not satisfied that Melissa

7

Weathers had the intent to hinder, delay, or defraud in this regard, but most likely she relied on her husband's representation about the size of their homestead property.

Because the Court finds that the elements of § 727(a)(2) have been met as to Shannon Weathers, the Court must deny his chapter 7 discharge. The Court will address the remaining allegation under § 727(a)(2) and the Fowlers' other causes of action under § 727.

### Concealment of Transfer Under § 727(a)(2)(A)

The second alleged concealment under § 727(a)(2)(A) concerns the pre-petition sale of a Kubota tractor. At the April 27 hearing, Shannon Weathers testified that he sold a 100 horsepower Kubota tractor to an employee named Carlette Anderson on June 30, 2009, less than one month prior to filing the bankruptcy petition.[4] The sale was for the sum of $6500.00 according to the bill of sale signed by Anderson and Shannon Weathers, but the transfer was not listed in the Weatherses' statement of financial affairs or amended statement of financial affairs despite Shannon Weathers's testimony that the sale had "recently" been listed on his schedules. Because the sale was a sale outside the ordinary course of Shannon Weathers's business, the sale should have been listed in his statement of financial affairs.

The Court finds that there is sufficient evidence to find that the failure to list the sale of the Kubota tractor was an act of concealment under § 727(a)(2)(A) with regard to Shannon Weathers.[5] First, the act complained of—the failure to list the transfer of the

---

[4] Shannon Weathers testified that Carlette Anderson was an executive assistant, but he did not specify whether Anderson was a personal employee or an employee of one of the business entities Shannon Weathers owned in whole or in part.

[5] The elements required to be met under § 727(a)(2) are:

(1) the act complained of was done within one year prior to the date of petition filing, or after the date of the filing of the petition;

Kubota tractor on the statement of financial affairs—technically occurred before the filing of the bankruptcy petition but continued after the petition was filed. Second, the act of concealment—omitting the transfer from the statement of financial affairs—was an act of Shannon Weathers. Third, the concealment concerned property of the debtor that would have been property of the estate after the petition was filed. Finally, the Court finds that the act of omitting the transfer was done with an intent to hinder, delay, or defraud creditors and the estate. Shannon Weathers admitted that it was the Fowlers who discovered the tractor was omitted from the statement of financial affairs, and it was the Fowlers who brought it to the attention of the trustee. Shannon Weathers indicated at one point in his testimony that he had forgotten to list the transfer of the Kubota tractor. However, because the sale was close in time to the filing of the bankruptcy petition (within one month prior to the bankruptcy filing), the sale price was $6500.00, and the sale was to an employee of Shannon Weathers, the Court believes that the transfer was not forgotten inadvertently. Rather, the Court finds that Shannon Weathers omitted the transfer from the statement of financial affairs with the intent to hinder, delay, or defraud his creditors and the estate. Therefore, the elements of § 727(a)(2) have been met with regard to Shannon Weathers and the Kubota tractor.

The Court lacks evidence concerning whether Melissa possessed the requisite intent to hinder, delay, or defraud creditors for the same reasons stated in the previous section. Therefore, the request for relief under § 727(a)(2) is denied as to her.

---

(2) the act was that of the debtor;

(3) it consisted of a transfer, removal, destruction or concealment of the debtor's property, or, if the act occurred after the date of the filing, property of the estate; and

(4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate.

11 U.S.C. § 727(a)(2).

9

**Section 727(a)(3)**

Under § 727(a)(3), the court shall grant the debtor a discharge, unless—

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transaction might be ascertained, unless such actor or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). The burden is on the "the objecting party to show that the debtor has failed to keep or preserve sufficient and/or accurate records which would reflect the recent financial condition of the debtor." *Anderson v. Wiess* (*In re Wiess*), 132 B.R. 588, 592 (Bankr. E.D. Ark. 1991) (citing Fed. R. Bankr. Proc. 4005).

The basis for the Fowlers' complaint with reference to § 727(a)(3) is the alleged failure of Shannon Weathers to explain why the 2007 federal income tax return for Haz-Mert reflected a shareholder note debt owed by Shannon Weathers to Haz-Mert in the amount of $464,870.00, but the 2008 tax return for Haz-Mert did not. When Shannon Weathers was asked what happened to reduce the debt to zero, he testified that he thought that it was something his accountant did in the course of preparing and electronically filing the returns. He stated that he had "no input" into the preparation of Haz-Mert's 2008 tax return and was never asked to sign it. He also testified that he did not pay the debt, and he was unable to explain the disappearance of the shareholder note in Haz-Mert's tax returns between 2007 and 2008. He also admitted that this debt owed to Haz-Mert was not reflected in his bankruptcy schedules.

The evidence concerning the discrepancy between the tax returns alone is not sufficient to find that the debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded financial information. The record otherwise reflects that the Weatherses' books, records, accounts, and computer data were made available. The Court believes that the Weatherses did, in fact, preserve their books and records from which their financial condition or business transactions could be ascertained. Therefore, the elements of § 727(a)(3) have not been met, and the Fowlers' request for relief under

10

§ 727(a)(3) is denied.

## Section 727(a)(4)

The Fowlers' complaint does not specify under which subsection of § 727(a)(4) they are proceeding; however, based on the evidence presented, § 727(a)(4)(A) is the only relevant subsection. Under § 727(a)(4)(A), the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail under § 727(a)(4)(A) the creditor, as the objecting party, must establish by a preponderance of evidence that—

1. the debtor made a statement under oath;
2. the statement was false;
3. the statement was made with fraudulent intent;
4. the debtor knew the statement was false; and
5. the statement related materially to the debtor's bankruptcy.

*Helena Chem. Co. v. Richmond* (*In re Richmond*), 429 B.R. 263, 307 (Bankr. E.D. Ark. 2010). The bankruptcy code, through § 727(a)(4)(A), "'requires nothing less than a full and complete disclosure of any and all apparent interests of any kind.'" *Korte*, 262 B.R. at 474 (quoting *Fokkena v. Tripp* (*In re Tripp*), 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998)). Section 727(a)(4)(A) promotes veracity in the statements and schedules to help prevent creditors and the trustee from having to resort to independent fact-finding and investigation. *In re Boyd*, 347 B.R. 349, 354 (Bankr. W.D. Ark. 2006). The disclosure requirement has implications beyond the administration of each individual bankruptcy case because "[t]he failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole." *National Am. Ins. Co. v. Guajardo* (*In re Guajardo*), 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997). There are multiple omissions on the Weatherses' schedules and statement of financial affairs that are relevant to the § 727(a)(4)(A) cause of action. The Court will address each in turn.

11

### Additional Acreage

First, regarding the acreage not disclosed that was discussed in a previous section, when the Weatherses signed the Declaration Concerning Debtor's Schedules, they declared "under penalty of perjury" that they read the schedules, and that the schedules were "true and correct" to the best of their "knowledge, information, and belief." Because the Weatherses did not disclose the additional acreage on their schedules, and they certified under penalty of perjury that the schedules were correct, the Weatherses made a false statement under oath. *National Am. Ins. Co.*, 215 B.R. at 741. Therefore, the first and second elements have been met. The third and fourth elements—whether a debtor makes a false oath with the necessary knowledge and intent to be denied a discharge under § 727(a)(4)—are questions of fact. *Korte*, 262 B.R. at 474. Intent can be "proven by circumstantial evidence or by inferences drawn from a course of conduct." *Ramsay v. Jones* (*In re Jones*), 175 B.R. 994, 1002 (Bankr. E.D. Ark. 1994). The surrounding circumstances and the debtor's course of conduct may be essential in determining the debtor's subjective state of mind because of the improbability that the debtor will concede fraudulent intent. *Cepelak v. Sears* (*In re Sears*), 246 B.R. 341, 349–50 (B.A.P. 8th Cir. 2000).

For the reasons previously stated, the Court believes that Shannon Weathers intentionally under-represented the amount of acreage of his homestead by claiming it to be 0.25 acres (which would be exempt in its entirety) rather than 0.30 acres. The Court does not believe Shannon Weathers's explanation as to why he stated the size of their homestead to be only 0.25 acres. The Court believes that he knew the actual acreage of the real property and intended to omit the additional 0.05 acres from the schedules in order to hide it from the Court and his creditors. The Court finds that Shannon Weathers omitted the additional 0.05 acres with fraudulent intent and that he knew the omission was not a true representation of his interest in the real property. Therefore, the third and fourth elements have been met as to Shannon Weathers. However, there is simply not enough evidence for this Court to find that Melissa Weathers knew the actual acreage and intended to omit it from the schedules. Therefore, the third and fourth elements fail as to

12

Melissa Weathers.

With respect to the fifth element, the threshold for materiality of the false oath is low, and it depends on whether the false oath "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Cepelak*, 246 B.R. at 347 (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)). Even the "omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent." *Id.*

The Court is satisfied that the omission of the 0.05 acres was material because the omission concerned the discovery of a valuable asset. The Weatherses paid $11,000.00 to the trustee for the non-exempt and previously unlisted portion of their homestead property. Therefore, the fifth and final element of § 727(a)(4)(A) has been met as to Shannon Weathers and the additional acreage. Accordingly, § 727(a)(4)(A) is an additional statutory provision under which the Court must deny Shannon Weathers his discharge.

### Kubota Tractor

The second omission is the transfer of the 100 horsepower Kubota tractor to Carlette Anderson. The Weatherses had a duty to reflect this transfer in their Statement of Financial Affairs. The Weatherses signed a Declaration under Penalty of Perjury by Individual Debtor, and by doing so declared "under penalty of perjury" that they "read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." However, the Statement of Financial Affairs was not correct because it failed to disclose the transfer of the Kubota tractor to Anderson. Therefore, the first and second elements of § 727(a)(4)(A) are met with regard to both Weatherses.

Regarding the third and fourth elements, the Court finds that Shannon Weathers knew that not stating there was a transfer was false and the omission was made with fraudulent

intent.  The schedules and statement of financial affairs prompts the disclosure of financial assets and liabilities through specific questions, making it less likely that the debtor will forget to list an asset.  *Johnson v. Baldridge* (*In re Baldridge*), 256 B.R. 284, 291 (Bankr. E.D. Ark. 2000).  If the debtor possessed, at a minimum, a reckless indifference to the truth in completing his schedules and statements, the Court may regard the non-disclosed matters as statements that are intentionally false.  *Ramsay*, 175 B.R. at 1002.  As stated above, the Court is satisfied that due to the nature of the sale being so relatively close in time to the filing (within one month prior to the bankruptcy filing) and because the sale price was $6500.00, Shannon Weathers did not inadvertently forget to list the transfer.  At a minimum, Shannon Weathers possessed a reckless indifference to the truth in failing to disclose the sale of the Kubota tractor.  Accordingly, the third and fourth element have been met with regard to Shannon Weathers.  However, there is no evidence that Melissa Weathers was aware of this sale that Shannon Weathers conducted, and the Court finds that the third and fourth elements are not met as to Melissa Weathers.  Regarding the fifth element, the sale of the tractor was material because the tractor would have been property of the estate, and the value received for the tractor was not a minimal amount.  For these reasons, all of the elements of § 727(a)(4)(A) are met as to Shannon Weathers, but not as to Melissa Weathers, and the Court must deny Shannon Weathers his discharge.

### Other Omissions

There are myriad other omissions from the Weatherses' schedules. While the evidence provided regarding the additional acreage and Kubota tractor alone merit denial of Shannon Weathers's discharge under § 727(a)(2) and (a)(4)(A), the evidence concerning the following omissions, when taken together, also merit a denial of Shannon Weathers's discharge under § 727(a)(4)(A).  The Court will discuss the items omitted and then apply the facts to the elements of § 727(a)(4)(A).

### 2000 Ford F-150 and 45' Maze Trailer

As recited earlier, the Weatherses filed their petition on July 27, 2009, and they filed their

14

initial schedules on August 10, 2009.  The meeting of creditors was held on September 21, 2009.  A 2004 examination was authorized to take place by Court Order on September 10, 2009.  It is unclear from the record whether or not the 2004 examination occurred, although the Fowlers' attorney frequently referenced the 2004 exam during which Shannon Weathers acknowledged several assets had not been listed.

One day before the meeting of creditors, which took place after the Court authorized the 2004 examination date, the Weatherses amended their schedule B to include a 2000 Ford F-150 truck [Ford F-150], valued at $3775.00, and a 45' Maze semi-trailer, valued at $1500.00.  At the meeting of creditors, the debtor admitted he initially failed to list the Ford F-150 and the trailer.  While no explanation was given as to why the Weatherses failed to list the 45' Maze semi-trailer, Shannon Weathers did offer an explanation for failing to list the Ford F-150 in his original schedules.[6]  Shannon Weathers testified that he purchased the new Ford F-150 in 2000, Jeff Head, an employee[7] at the time, took immediate possession of the Ford F-150.  Shannon Weathers stated, "that was always Jeff's truck, and I neglected to put it on [the schedules].  I forgot all about it."  Shannon Weathers said Head paid all of the expenses incidental to the maintenance of the vehicle and that the Weatherses never had possession of the vehicle once it was purchased.  However, Shannon Weathers acknowledged it belonged to him and that he had owned it since 2000.  Shannon also admitted that the omission of the Ford F-150 was first brought to his attention by the Fowlers at the "first 2004 examination."

### 1998 International Truck 4700 and 1999 Ford E-350

Approximately six weeks after the Weatherses' Schedule B was first amended, they

---

[6] The Court recognizes that the Weatherses' daughter's medical issues serve as a possible explanation for omitting items from the schedules and statements, and the Court has considered it in its findings concerning intent.

[7] Again, it is not clear from the record whether Head was a personal employee of Shannon Weathers or an employee of one of the Weatherses' business entities.

amended their schedules again on November 3, 2009, to list two additional items:  a 1998 International Truck 4700, valued at $10,000.00, and a 1999 Ford E-350, valued at $7500.00.  No credible explanation was given as to why these two items were not listed in the original schedules or in the first amended schedules filed on September 20.

### 2002 GMC Pickup Truck

On May 26, 2010, the Weatherses amended their Schedule B again to list a 2002 GMC pickup truck [GMC Truck]valued at $2850.00.  Counsel for the Fowlers had first questioned the debtor about this truck at the 2004 examination, and at that time, Shannon Weathers claimed that he had forgotten to list it in their schedules.  However, the Weatherses did not amend their Schedule B to add the GMC Truck until eight months—and three amendments—later.  During that entire time, Shannon Weathers maintained possession of and drove the GMC Truck, and he also admitted that a "stripe was taken off" the GMC Truck.  At the trial, Shannon Weathers's only explanation for why it had taken so long to include the GMC Truck in the schedules was that he "thought that it had been listed" and that he "did not verify that it was [listed] before the petition was filed."  He also stated that it had been his intention to purchase the GMC Truck from the estate, but that ultimately the trustee sold it at auction.

### Integrity Leasing, Inc.

Shannon Weathers also failed to list his interest in Integrity Leasing, Inc. [Integrity Leasing] until two weeks before the April 27 hearing, when he amended his Schedule B for the fourth time, on April 13, 2011.  In their amended Schedule B, the Weatherses listed a one-third interest in the corporation and a $0.00 current value.  Despite the fact that the Weatherses claim a one-third ownership interest in their amended schedules, Shannon  Weathers testified at the first meeting of creditors that Integrity Leasing was owned by Haz-Mert, but later testified at a deposition and admitted at the April 27 hearing that he was the sole member.  Integrity Leasing was formed some time prior to the bankruptcy and owned a number of assets, including five trailers.

16

The Weatherses' interest in Integrity Leasing, even though it was valued at $0.00, should have been listed in the initial bankruptcy schedules as well. Shannon Weathers testified that he did not previously list Integrity Leasing in his schedules because he considered it a "non-entity" that "was dissolved prior to bankruptcy filings." When questioned whether Integrity Leasing's charter was revoked for failure to pay the franchise tax, Shannon Weathers answered, "again, we just let it go away, so I would imagine it was revoked, yes." Shannon Weathers testified that Dave Covington had lent him the money to purchase the trailers for Integrity Leasing but this loan was not reflected in his schedules. Shannon Weathers also testified that he did not list Integrity Leasing because he considered Covington to be the owner of the trailers because Covington was the one who put up all the money for the trailers in Integrity Leasing. However, Dave Covington does not appear as a creditor in the Weatherses' bankruptcy.

### Enviro-Sources, Inc.

In addition to the omissions above, there is also a discrepancy regarding Enviro-Sources, Inc. [Enviro-Sources], another entity owned by the Weatherses. Shannon Weathers testified he began operating Enviro-Sources on July 1, 2009, which is within one month before the Weatherses filed their personal bankruptcy petition and Haz-Mert filed its bankruptcy petition. On the Weatherses' Schedule B filed on August 10, 2009, Enviro-Sources was listed with a value of "$0.00." However, in a balance sheet dated July 27, 2009, which Shannon Weathers provided to the Arkansas Highway Police to obtain a hazardous waste transporter's permit, Shannon Weathers listed Enviro-Sources's total equity as $61,275.42. Shannon Weathers attempted to explain this discrepancy as being the result of not accounting for the value of certain assets, such as machinery and equipment, in the value of Enviro-Sources on his schedules, but instead listing the assets as separate assets on his schedules because he anticipated buying them from the trustee. The Weatherses' Schedule B reflects assets of Enviro-Sources "a bank account at Signature Bank with ___" plus accounts receivable that total $48,826.50 and "payables" that total $57,574.68. The major discrepancy between Schedule B and the balance sheet provided to the Arkansas Highway Police is the amount of payables—the balance sheet

17

provided to the Arkansas Highway Police reflects payables of only $702.07. This discrepancy was never explained. One of these documents is incorrect, but the Court cannot state with certainty which one is incorrect. Accordingly, the Court cannot find that this was an attempt to conceal certain assets in the petition in violation of § 727(a)(2). However, because the Court finds that one of the documents is incorrect, the discrepancy between the Weatherses' Schedule B dated August 10, 2009, and the balance sheet dated July 27, 2009, reflects poorly on Shannon Weathers's credibility in all of these related matters.

### Elements of § 727(a)(4)(A) and the Other Omissions

As stated above, omissions of assets from schedules and statements constitutes a false statement under oath. Therefore, the omission of the Ford F-150, 45' Maze Trailer, 1998 International Truck 4700, 1999 Ford E-350, 2002 GMC Pickup Truck, and the Weatherses' interest in Integrity Leasing constitute false oaths, thereby satisfying the first two elements of § 727(a)(4)(A).[8] The fifth element—materiality—is, again, easily met. The omissions concern valuable assets of the bankruptcy estate, and the Court finds that the Weatherses' failure to disclose these assets was a material omission. A discussion of the third and fourth elements of § 727(a)(4)(A) will be discussed with regard to Shannon and Melissa Weathers separately.

### Shannon Weathers

Additionally, the Court finds that Shannon Weathers had the requisite knowledge and intent to defraud creditors in failing to disclose these assets. Had Shannon Weathers

---

[8] To prevail under § 727(a)(4)(A), the creditor, as the objecting party, must establish by a preponderance of the evidence that—
    1. the debtor made a statement under oath;
    2. the statement was false;
    3. the statement was made with fraudulent intent;
    4. the debtor knew the statement was false; and
    5. the statement related materially to the debtor's bankruptcy.
*Helena Chem. Co.*, 429 B.R. at 307.

only omitted one or two minor assets, the Court would be inclined to believe that he simply forgot to list them without any improper intent.  However, based upon the totality of the evidence presented, Shannon Weathers's  claims of innocence and ignorance lack credibility.  The Court believes that he simply chose not to be candid in listing all of their assets, or, at best, completed, reviewed, and signed, their schedules and statements with a reckless indifference to the truth.

Shannon Weathers's explanations are troubling when he should have known how critical it was to list all items.  For instance, Shannon Weathers, at a minimum, should have added the 2002 GMC truck in his list of items with the first amended filing on September 20, 2009.  The Court finds that Shannon Weathers either did not review his schedules when he filed his first amendment to confirm whether the pickup truck had been listed, or he simply wanted to see if he could get away with keeping it.  Also, the fact that Integrity Leasing, Inc. ultimately had no value because its assets were secured by a bank and were, in fact, turned over to the trustee does not mitigate the requirement that this asset had to be listed.  The trustee is the proper person to determine what equity there may have been in that company and to handle it accordingly.  Also, Shannon Weathers's conflicting testimony concerning the ownership of Integrity Leasing further detracts from his credibility and reflects adversely as to his intent.

The fact that the schedules were amended to disclose assets four times in the two years after their initial schedules and statements were filed does not weigh in Shannon Weathers's favor.  Generally, bankruptcy courts allow debtors to amend their schedules liberally.  *In re Kaelin*, 308 F.3d 885, 889 (8th Cir. 2002).  However, "the policy of freely allowing amendment . . . is not an absolute and can be tempered by the actions of the debtor."  *Id.*  Specifically, a debtor will not be allowed to amend his schedules if the court finds bad faith on the part of the debtor.  *Id.*  The Weatherses failed to list several valuable assets in their original schedules.  The failure to list these assets is aggravated by the  subsequent and numerous delays in amending the schedules once these assets came to the attention or knowledge of the trustee or creditors at the meeting of creditors,

the 2004 examination presumably held on September 10, 2009, or through discovery.

The Weatherses' counsel argued that the omissions and inconsistencies in the schedules, as well as the subsequent delays in amending the schedules, were the result of the complicated nature of both the Weatherses' personal bankruptcy case and Haz-Mert's bankruptcy case.  In addition, Shannon Weathers attempted to explain that these "mistakes" were not made with the intent to deceive the Court, the trustee, or creditors, but instead were the result of various personal issues he and his wife were experiencing prior to filing both bankruptcy cases, including financial troubles with creditors, their daughter's serious health problems, and the recent death of a family member.  Shannon Weathers also claimed that he was "not a detail person" and for this reason was not good about providing all the proper information.  Indeed, the Court agrees that the Weatherses' personal bankruptcy case and the Haz-Mert bankruptcy case are relatively complicated. However, the fact that these are relatively complicated cases and Shannon Weathers is "not a detail person" does not excuse the debtors from the requirement that they must list all of their assets and debts and otherwise answer truthfully all the questions and statements referenced in the petition and schedules.  Again, if the debtor possessed, at a minimum, a reckless indifference to the truth in completing his schedules and statements, the Court may regard the non-disclosed matters as statements that are intentionally false. *Ramsay*, 175 B.R. at 1002.  In addition, most, if not all, debtors who come before the Court are preoccupied by financial troubles and other personal concerns, and while the Court may be sympathetic to these concerns, it must still uphold the requirements as set forth in the bankruptcy code.

While the Court commends the Weatherses for cooperating with the chapter 7 trustee's appraiser, Cecil Phillips, their cooperation in providing assets once the assets were discovered is insufficient to overcome the fact that some of the assets were concealed or not listed initially or in some of the subsequent amendments.  The fact that the items that were not included in the original schedules were items that likely could be used

personally or in Enviro-Sources proves some additional motive for Shannon Weathers to attempt to conceal those items.

Based on the evidence and the Court's findings of credibility, the Court finds that Shannon Weathers knew he had not disclosed all of their assets and failed to disclose the assets with fraudulent intent.  Therefore, the third and fourth elements have been met with regard to Shannon Weathers.  Accordingly, the five elements of § 727(a)(4)(A) have been met with regard to Shannon Weathers, and his chapter 7 discharge must be denied.[9]

### Melissa Weathers

Melissa Weathers's testimony was relatively brief.  She testified that she was a homemaker.  At the outset of her testimony, she was asked whether she was one of the parties in the "personal Weatherses' bankruptcy."  She was then questioned with regard to her involvement with Haz-Mert, and whether she had "anything to do with Haz-Mert" prior to Haz-Mert filing its bankruptcy petition.  She testified that she was not an employee of Haz-Mert, had no "activity" within Haz-Mert within the two years prior to filing of a bankruptcy petition, and did not receive any money or compensation from Haz-Mert for the two years prior to "filing bankruptcy."  She was asked about certain checks that had been signed by Shannon Weathers and made to the order of Melissa Weathers, and she testified that she did not receive the money from those checks unless she "saw her signature on the back of the check."

---

[9] A substantial part of the evidence at the April 27 hearing included testimony and other evidence to support the Fowlers' claim that the Weatherses had received significantly more income in the two years prior to the filing of the bankruptcy than the combined average monthly income reflected on their bankruptcy petition in the amount of $6000.00.  John Ervin, a Certified Public Accountant and expert witness for the Fowlers, testified that after reviewing bank accounts, books, and records of both the Weatherses and Haz-Mert, he was unable to reconcile the Weatherses' personal federal tax returns with Haz-Mert's federal tax returns with respect to the apparent monetary benefits flowing from Haz-Mert to the Weatherses.  Regardless, the Fowlers did not introduce sufficient evidence or testimony to prove beyond a preponderance of the evidence that the Weatherses' income as reflected on their schedules was false or that the Weatherses possessed the requisite fraudulent intent.

At this point, after citing to both the Weatherses' and Haz-Mert's bankruptcy, counsel for the Fowlers began to question Melissa Weathers about "the bankruptcy petition" without differentiating between what bankruptcy petition he was referring to, and Melissa Weathers responded to his questions.  She testified she was not sure whether she read the bankruptcy petition, but then agreed that she read it but did not understand it.  She testified that she asked to have the petition explained to her "on occasion."  When asked whether she made sure the assets were "right" on "the schedules," this exchange followed:

| | |
|---|---|
| Melissa Weathers: | Which assets? |
| Counsel for the Fowlers: | Any of the assets—all the assets? |
| Melissa Weathers: | I haven't had anything to do with the business in years, so I don't know. |

Additionally, Melissa Weathers admitted that she "made a point" not to know about "this litigation," stated that she did not want to know about it, and then stated that she did not "run the business."  Then, counsel for the Fowlers asked "You're on the personal bankruptcy though, aren't you," to which Melissa Weathers responded "Yes, I am."

At no point during cross-examination did counsel for the Fowlers clarify which bankruptcy, petition, schedules, or litigation—Haz-Mert's or the Weathers'— he was asking Melissa Weathers about, and Melissa Weathers's answers did not clarify to which petition and schedules she was referring when answering.  Melissa Weathers did not sign the Haz-Mert bankruptcy petition, so the Court could assume that when she was answering counsel's questions, she was answering as to the petition and schedules that she signed.  However, throughout her testimony, Melissa repeated that she did not have anything to do with the business and counsel for the Fowlers did mention the Haz-Mert bankruptcy and discuss matters having to do with Haz-Mert throughout his questioning.  The Court will not assume such facts in a denial of discharge action.  If it was clear to the Court that Melissa Weathers was testifying about the personal bankruptcy petition and schedules—that she made a point not to know about the assets disclosed in their personal

22

schedules—then the Court could find that she treated her petition and schedules with reckless disregard, and the knowledge and intent elements of § 727(a)(4)(A) could be satisfied.  However, without that extremely important clarification, the Court finds there is not sufficient evidence concerning how she treated her petition and schedules for the Court to infer fraudulent intent or a reckless disregard.  The only evidence the Court has before it that concerns Melissa Weathers and her intent to defraud the creditors and the estate in the personal bankruptcy is her signature on inaccurate schedules, statements of financial affairs, and amendments thereto, and in this case, this is not enough evidence on which to deny her discharge.  Therefore, the elements of § 727(a)(4)(A) have not been met with regard to Melissa Weathers, and the Fowlers' request for relief with regard to Melissa Weathers is denied.

**Section 727(a)(5)**

Under § 727(a)(5), the Court cannot grant the debtors a discharge if the debtors "have failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets" to meet the debtors' liabilities.  11 U.S.C. § 727(a)(5).

Based on the evidence, the Court believes that the Weatherses were able to explain any "loss of assets" or deficiency of assets.  It is true that this Court believes that some of the assets were purposely left off the schedules, but omitting assets from schedules is different from being unable to explain a loss or deficiency of assets.  Therefore, the Court finds that the Fowlers, as the objecting creditors, failed on their burden of proof as to this allegation.

**The Weatherses' Motion for Contempt**

Subsequent to the Weatherses' personal bankruptcy filing on July 27, 2009,  the Fowlers commenced two adversary proceedings that each named the Weatherses and Haz-Mert as separate defendants:  (1) *Stephen Ross Fowler, L. Elaine Fowler and Franklin Charles Fowler v. Shannon Walton Weathers, Melissa Sue Weathers* and *Hazardous Material*

*Emergency Response and Training, Inc.*, case number 5:09-ap-07204, which was filed in association with the Haz-Mert bankruptcy case, 5:09-bk-73446; and (2) this case, 5:09-ap-07203, which was filed in association with the Weatherses' personal bankruptcy case.  Summonses were issued on the Weatherses and Haz-Mert on November 30, 2009. With the exception of the captions, the two complaints are identical, and, on May 18, 2010, the Court entered an order granting the Fowlers' motion to consolidate the two adversary proceedings.  Approximately one month after the consolidation, the Weatherses filed their counterclaim and motion for contempt.

The Weatherses argue that the Fowlers violated the automatic stay under § 362(a)(1) and (a)(6) when the complaint for the adversary proceeding in the Haz-Mert case was filed and summonses served upon the Weatherses.  Section 362(a)(1) prohibits the—

> commencement . . . , including the issuance or employment of process, of a judicial . . . or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).  Section 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(6).

Count I of the Fowlers' original and amended complaint—objection to discharge under § 727—is not relevant to the motion for contempt because it relates to matters arising at the time of or after the filing of the Weatherses' personal bankruptcy.  However, § 362(a)(1) and (6) are applicable to Count II of the Fowlers' original complaint, which alleges embezzlement under § 523(a)(4) and relates to matters that may have been actionable prior to the commencement of the Weatherses' personal bankruptcy.  At the trial, counsel for the Fowlers argued that the Weatherses waived their right to the automatic stay once the Weatherses defended the adversary proceeding filed in the Haz-Mert case.

24

Based on the record, the Court finds that the Fowlers violated the automatic stay; however, the Fowlers did not put on sufficient proof of damages suffered as a consequence of the violation.  Shannon Weathers and his counsel shared the following exchange concerning the Haz-Mert adversary proceeding:

| Counsel for the Weatherses: | As a result of this being filed, was it necessary that you incurred attorney fees to defend yourself in this? |
|---|---|
| Shannon Weathers: | Yes. |
| Counsel for the Weatherses: | And is that in—in addition to attorney fees connected with today's action and subsequent—or all that's attached to it? |
| Shannon Weathers: | Yes. |
| . . . | |
| Counsel for the Weatherses: | Do you know about how much in attorney fees you've had to pay to defend this? |
| Shannon Weathers: | About $2500.00. |

While counsel differentiated between the attorney fees accrued on account of the Haz-Mert adversary proceeding from fees accrued on account of the April 27 hearing, it is not clear that the $2500.00 in attorney fees was unrelated to the identical adversary proceeding filed in the Weatherses' bankruptcy case.  Because the Haz-Mert and Weatherses' adversary proceedings were consolidated and the issues were the same, the Court cannot discern based on the testimony whether the $2500.00 was accrued solely on account of the Haz-Mert adversary proceeding.  Accordingly, the Court cannot award the Weatherses a judgment for the automatic stay violation because the damages have not been proven, and the Court need not address the waiver argument of the Fowlers.

**Conclusion**

For the foregoing reasons, the Court finds that the elements of § 727(a)(2) and § 727(a)(4)(A) have been met as to Shannon Weathers only.  Regarding § 727(a)(2), the

25

Court finds that Shannon Weathers concealed the actual size of his homestead and the transfer of the Kubota tractor with the intent to hinder, delay, or defraud his creditors. Regarding § 727(a)(4)(A), the Court finds that Shannon Weathers knowingly and fraudulently gave a false oath with respect to the additional acreage and the Kubota tractor, and that Shannon Weathers knowingly and fraudulently gave a false oath with respect to those assets listed as "Other Omissions."  Because the elements of § 727(a)(2) and § 727(a)(4)(A) have been met as to Shannon Weathers, the Court must deny Shannon Weathers a chapter 7 discharge.  Because not all of the elements of any of the subsections of § 727 have been met with regard to Melissa Weathers, the Fowlers' requests for relief under § 727 are denied as to her.  Additionally, while the Fowlers violated the automatic stay, the Weatherses did not put on sufficient proof as to damages, and the Court cannot award the Weatherses a judgment for the automatic stay violation.

IT IS SO ORDERED.

July 21, 2011
_____

DATE

*Ben Barry*
_____

BEN T. BARRY
UNITED STATES BANKRUPTCY JUDGE

cc:    Shannon and Melissa Weathers, debtors
       E. Kent Hirsch, attorney for the Fowlers
       Gail Inman-Campbell, attorney for the debtors
       U.S. Trustee
       All creditors and interested parties